## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

BABAK PAYROW,

      Plaintiff,

v.                               Case No. 8:22-cv-520-TPB-UAM

CHAD CHRONISTER, in his official
capacity as Sheriff of Hillsborough
County, and DAVID CLOUD, in his
individual capacity,

      Defendants.

_____ /

## ORDER GRANTING DEFENDANTS' MOTIONS
## FOR SUMMARY JUDGMENT

This matter is before the Court on "Defendant's Dispositive Motion for Summary Judgment and Incorporated Memorandum of Law" (Doc. 69), filed by Defendant David Cloud on November 27, 2023, and "Defendant's Dispositive Motion for Summary Judgment and Incorporated Memorandum of Law" (Doc. 71), filed by Defendant Chad Chronister in his official capacity as Sheriff of Hillsborough County, Florida, on November 27, 2023.   Plaintiff filed responses to the motions on December 22, 2023 (Docs. 75; 76), and Defendants filed replies on January 9, 2024 (Docs. 79; 80).   The Court held a hearing on the motions on May 13, 2024.   (Doc. 108).   Following the hearing, each side filed notices of supplemental authority. (Docs. 109; 110).   Based upon the motions, memoranda, replies, argument of counsel, court file, and record, the Court finds as follows:

## **Background**

This § 1983 case arises from a November 29, 2017, encounter between Plaintiff Babak Payrow and Defendant David Cloud, a Hillsborough County Sheriff's Deputy.   Payrow suffers from serious mental illness, including schizophrenia, and he has been involuntarily committed on more than one occasion. That night, Cloud pulled his patrol car up behind Payrow, who stopped and advanced toward the car.   Cloud emerged from the vehicle.   Payrow, ignoring Cloud's instructions to stop, suddenly and without warning charged aggressively at Cloud, who shot Payrow several times.

Payrow was taken to the hospital for treatment.   Based on Cloud's statements that Payrow wielded a weapon when he attacked, Payrow was arrested, booked, and charged with aggravated assault and attempted murder of a law enforcement officer.   The State of Florida dropped the assault charge, and Payrow was acquitted by a jury after trial on the attempted murder charge.   He thereafter filed this suit for damages under § 1983 and state law for excessive force and false arrest against Cloud and Defendant Chad Chronister in his capacity of Sheriff of Hillsborough County.

Both Defendants have moved for summary judgment on various grounds. Resolving the motion requires understanding the eyewitness testimony concerning the events of November 29, 2017.

*Witness Accounts of the Incident*

Three individuals have provided eyewitness testimony as to the incident in suit: Payrow, Cloud, and Daniel Rojas, a non-party witness who lived near where the encounter between Payrow and Cloud occurred.   All three testified in the criminal proceedings against Payrow.

<u>Cloud's Account</u>

According to Cloud, he was driving alone in his patrol car on Turner Road in northern Hillsborough County at 10:30 that night when he passed the intersection of Turner and Brushy Creek Drive.   He noticed Payrow sitting on an electrical box near the intersection.   Cloud did a U-turn on Turner Road, returned to the intersection, turned onto Brushy Creek Drive, and pulled up behind Payrow, who had begun walking down that residential street.   Cloud shone his patrol car's spotlight on Payrow, who then turned and advanced toward Cloud's patrol car. Cloud emerged from his car.   Payrow, appearing to Cloud to be mentally disturbed, said "FBI special investigation" and advanced toward Cloud with his right hand inside a small bag he was carrying.   Cloud ordered him to stop.   Payrow suddenly and aggressively charged at Cloud, withdrawing from a small black bag something that Cloud took to be a knife.   As Payrow rushed at him, Cloud, fearing for his life, drew his service revolver and shot Payrow several times.   Payrow collided with Cloud, and they both fell to the ground.   Cloud called for backup and medical assistance for Payrow.

Law enforcement recovered a number of items at the scene consistent with Cloud's testimony, including a small black bag and a screwdriver, which lab analysis showed had Payrow's DNA on it.   Medical evidence showed that Payrow had been shot in the front, and Cloud's shirt had Payrow's blood on it, consistent with Cloud's testimony that Payrow had charged him, Cloud had fired, and Payrow had collided with him.

Rojas's Account

Daniel Rojas lived in the neighborhood and witnessed the attack.   He provided a description that is generally consistent with Cloud's version, although there are discrepancies as to some details.   According to Rojas, after Cloud emerged from the car and told Payrow to stop, Payrow hesitated and then rushed at Cloud aggressively as if to tackle him, at which point Rojas heard a series of gunshots in rapid succession.   Rojas quickly went inside his house, fearing that Payrow had shot Cloud and might turn on him next.   When Rojas emerged from the house, he saw Payrow lying on the ground and Cloud standing.

The most significant difference between Rojas's and Cloud's accounts is that Rojas did not see anything in Payrow's hands as he attacked.   Rojas, however, acknowledged in his deposition in the criminal case, "it's not like I was looking at the same time. . . . [I]f he had a little screwdriver on him or something, that was out of my sight, you now, not that I was looking.   Again, in my mind, he had shot the cop; the suspect shot the cop.   That's why we ran."   Rojas testified he also did not see Cloud draw his revolver, because "[e]verything happened so fast."

<u>Payrow's Conflicting Accounts</u>

Payrow has offered multiple, conflicting accounts of what happened.   First, at his trial for attempted murder in early 2020, Payrow testified under oath that he was not even present on Brushy Creek Drive that night, that he had no encounter with Cloud, and that he was shot by an armed robber at another location in an unrelated incident.   As noted above, Payrow obtained an acquittal on the attempted murder charge.

In early 2022, Payrow filed this lawsuit against Cloud and Sheriff Chronister, asserting and state law claims for excessive force, false arrest, and false imprisonment.   Contrary to Payrow's testimony in his criminal trial, Payrow's original complaint in this case alleged that Payrow encountered Cloud on Brushy Creek Drive that night.   Cloud pulled up behind him and shone the patrol car's searchlight on him, which caused Payrow to turn and face Cloud.   Cloud emerged from his patrol car with his hand on his weapon.   Payrow took a few steps backward and then "continued in the direction of his residence, which was located only a few houses north."   The complaint alleged that Cloud shot Payrow in the back as Payrow walked away.

Payrow filed an amended complaint in June 2022, changing his story yet again in at least one material respect:   Payrow alleged that when Cloud shot him without warning, Payrow had begun to move "in the direction towards his residence and [Cloud]."   The amended complaint did not allege that Cloud shot Payrow in the back.   In his November 2022 sworn interrogatory answers, Payrow first stated that

"as I continued to move closer to the deputy, he shot me."   But then in another answer he stated, "[t]he deputy shot me for walking away," which appears to return to the version of events alleged in the original complaint.

In Payrow's February 2023 deposition testimony, he stated, contradicting the allegations of his complaint, that he did not see Cloud pull up behind him, that Cloud shone no spotlight on him, and that Cloud said nothing to him.   He also said he never rushed at Cloud.   Addressing his interrogatory answer stating that Cloud shot him "as [he] continued to move closer" to Cloud, Payrow stated what he really meant was the opposite: it was Cloud who moved towards him.   Payrow further testified:

> Q:   So you were walking away from him when you were shot?
> A:   Yeah.
> Q:   So were you shot in the back?
> A:   No, he was – he shot me up front, yeah.
> Q:   How were you walking away from him if you were shot in the front?
> A:   Well, he just started firing at me.   He didn't say nothing, he just shot me, and I didn't – I wasn't going towards him, I was going towards my grandma house, and I just got shot six times, that was it.

Payrow also testified in the deposition that all his testimony at the criminal trial was truthful, but he claimed not to recall his trial testimony that he had not encountered Cloud that night and suffered his gunshot wounds in a different incident at another location.

### *Payrow's Claims and Defendants' Summary Judgment Motions*

The amended complaint alleges claims for excessive force under Florida law against the Sheriff (Count I), unnecessary/excessive force under 42 U.S.C. § 1983

against Cloud (Count II), false arrest under Florida law against the Sheriff (Count III), false imprisonment under Florida law against the Sheriff (Count IV), and false arrest under § 1983 against Cloud (Count V).

Defendants have moved for summary judgment as to all claims on multiple grounds. Both Defendants argue that Payrow's claims should be rejected based on judicial estoppel because Payrow gave testimony under oath in his criminal trial directly contrary to the position he now takes in this civil lawsuit. Alternatively, they argue Payrow's account of the incident on Brushy Creek Drive should not be considered for purposes of summary judgment because Payrow is incompetent to testify and/or because no reasonable jury could accept his testimony, given the overwhelming record evidence to the contrary.

Cloud further argues the § 1983 claims against him should be dismissed based on qualified immunity. The Sheriff argues that, depending on which version of events the Court credits, either sovereign immunity precludes the claims against him because Payrow acted with malice, or Payrow has failed to establish the elements of his claims for excessive force, false imprisonment, and false arrest.

## **Legal Standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A properly supported motion for summary judgment is not defeated by the existence of a factual dispute. *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 249 (1986).   Only the existence of a genuine issue of material fact will preclude summary judgment.   *Id.*

The moving party bears the initial burden of showing that there are no genuine issues of material fact.   *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004).   When the moving party has discharged its burden, the nonmoving party must then designate specific facts showing the existence of genuine issues of material fact.   *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593-94 (11th Cir. 1995).   If there is a conflict between the parties' allegations or evidence, the nonmoving party's evidence is presumed to be true and all reasonable inferences must be drawn in the nonmoving party's favor.   *Shotz v. City of Plantation*, 344 F.3d 1161, 1164 (11th Cir. 2003).

Judicial estoppel is an equitable doctrine committed to the discretion of the district court.   *Slater v. United States Steel Corp.*, 871 F.3d 1174, 1180 n.4 (11th Cir. 2017) (en banc).

## Analysis

### *Judicial Estoppel Bars Payrow's Claims.*

Both Defendants argue that summary judgment should be granted based on judicial estoppel.   "[J]udicial estoppel is designed to prevent a party from asserting a claim in a legal proceeding that is inconsistent with a claim taken by the party in a previous preceding."   *Robinson v. Tyson Foods, Inc.*, 595 F.3d 1269, 1273 (11th Cir. 2010) (quotation omitted).   Judicial estoppel is designed to "protect the integrity of the judicial process by prohibiting parties from changing positions

according to the exigencies of the moment." *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (internal quotation omitted).

In deciding whether to apply judicial estoppel, courts consider whether: (1) the party to be estopped took a position under oath in a prior proceeding that is inconsistent with his or her position in the current lawsuit; and (2) the party intended to make a mockery of the judicial system. *See Slater*, 871 F.3d at 1180. The requisite intent may be inferred from all the facts and circumstances. *Id.* at 1185. Courts in various contexts have also considered such additional factors as the degree of the inconsistency between the two positions, whether the prior inconsistent position was due to mistake or inadvertence, whether and how the party corrected the prior misstatements or omissions, the party's level of sophistication, whether the party's assertion of the inconsistent position in the prior proceeding was successful, and whether he or she would gain an unfair advantage by the change of position. *See, e.g., Korman v. Iglesias*, 778 F. App'x 680, 682 (11th Cir. 2019); *Slater*, 871 F.3d at 1176-77.

Defendants argue that judicial estoppel should apply here to preclude Payrow from first testifying under oath to avoid a criminal conviction that he had no encounter with Deputy Cloud that night, and then in this case asserting that Cloud stopped him and shot him without sufficient grounds or for no reason at all, in order to obtain a hefty civil judgment for damages. Payrow's response focuses on the fact that the application of estoppel is discretionary and argues that Payrow should not be considered as sufficiently "sophisticated" for the application of judicial estoppel

by reason of his mental health issues.   *See Slater*, 871 F.3d at 1176-77 (taking into account the debtor's sophistication in assessing whether his failure to disclose claim in bankruptcy filings evidenced an intent to make a mockery of the judicial system).

The Court concludes judicial estoppel should be applied here.   First, the inconsistency between Payrow's testimony under oath in his criminal trial and his position now is stark.   Payrow now asserts that Cloud stopped him and then shot him without a sufficient reason, in one version doing so without warning as he walked away from Cloud.   However, to avoid his criminal conviction, Payrow testified he was not even at the location where the incident with Cloud occurred and that some other individual – not Cloud – shot him.

Second, the Court finds from all the facts and circumstances that Payrow had the necessary intent to make a mockery of the judicial system.   Payrow clearly had a motive to offer the story he did at the criminal trial in his successful effort to avoid conviction, and a motive in this case to offer a very different account in order to obtain a damage award.   These motives and the timing of his divergent positions suggest a party who is "changing positions according to the exigencies of the moment."   *See New Hampshire*, 532 U.S. at 749.   Payrow has not asserted that he made a mistake in his prior testimony, nor has he admitted that he did not tell the truth then.   He has still not explained the inconsistency.   Instead, he avoids the need to do so by the expedient of saying that he fails to remember the prior testimony.

Payrow argues that his longstanding mental health issues weigh against a finding of intent, pointing to a diagnosis of schizophrenia with delusions and fixated beliefs.   Payrow offers the Court no explanation as to how his specific mental health issues allow the Court to conclude his apparently expedient change of position resulted from "unthinking or confused blunder" rather than "cold calculation."   Accordingly, the Court concludes that on balance and under all the circumstances, the doctrine of judicial estoppel applies here, and summary judgment is due to be granted on that basis.

Summary judgment is alternatively appropriate on other grounds, as discussed below.   In particular, to the extent judicial estoppel might be deemed inappropriate on the ground that Payrow's mental illness renders him unable to perceive or remember events or understand the duty to tell the truth, his testimony to the version of events given in his deposition would not be competent or admissible, and the other evidence in this case is insufficient to create an issue of fact for trial.

### Payrow's Testimony Does Not Create a Genuine Issue of Material Fact.

Defendants argue that if summary judgment is not granted based on judicial estoppel, it could only be based on Payrow's mental health problems, and that the record demonstrates Payrow is incompetent to testify to the version(s) of events given in his deposition.   Rule 601 states that "[e]very person is competent to be a witness unless these rules provide otherwise."   The Eleventh Circuit has held that, "[n]otwithstanding Rule 601, a court has the power to rule that a witness is

incapable of testifying." *United States v. Gates*, 10 F.3d 765, 766 (11th Cir. 1993); *see also United States v. Khoury*, 901 F.2d 948, 966 (11th Cir. 1990) (holding that Rule 601 creates only a presumption of competence).

The traditional test for competence is whether the witness has the capacity to perceive, remember, narrate, and understand the duty to tell the truth. *See* 1 *McCormick On Evid*. § 62 (8th ed. 2022); *Sinclair v. Wainwright*, 814 F.2d 1516, 1522 (11th Cir. 1987) (noting that "a lunatic may be allowed to testify if he is able to [comprehend] the obligation of an oath and give a correct account of matters he has seen or heard") (quoting *Shuler v. Wainwright*, 491 F.2d 1213, 1224 (5th Cir. 1974)). Florida law expressly retains these common law requirements. *See* § 90.603, *F.S.*; *Clinton v. State*, 43 So. 312, 215 (Fla. 1907); Charles Ehrhardt, *West's Fla. Pr. Series – Evidence* § 601.1 (2023 ed.).

A number of facts support a conclusion that Payrow is not competent. Payrow starkly changed his position between his criminal trial and his current lawsuit (assuming, *arguendo*, the Court is wrong in concluding these discrepancies result from calculation on Payrow's part). He has offered contradictory allegations and statements as whether he was walking towards or away from Cloud when he was shot. He stated in his deposition that his criminal trial testimony was truthful even though it contradicts what he now claims to be the truth, and even though he says he cannot recall when he said at trial. Defendants point to other contradictions indicating that Payrow cannot recall what happened or understand his obligation to tell the truth, or both. Payrow himself in seeking to avoid

Defendants' judicial estoppel arguments points to a diagnosis by a defense expert near the time of his deposition in this case of "acute schizophrenia – multiple episodes (on-going), delusions with fixed false beliefs and disorganized speech."

There are certainly responses that could be made to these arguments, but Payrow has decided not to make them, most likely a strategic decision to bolster his opposition to judicial estoppel.   Nowhere in his responses opposing Defendants' motions for summary judgment does Payrow argue that his deposition testimony is admissible or creates an issue of fact.   Instead, he relies on Rojas's and Cloud's version of events.   At the hearing on the summary judgment motion, Payrow's counsel avoided answering the Court's question as to whether Payrow was competent to testify, and he said only that Payrow as able to take the stand and provide "a version" of events, although he indicated it was unclear whether anyone should or would believe it.

While ordinarily it might be the better practice to hold a hearing in which the Court could examine Payrow, under these circumstances, that is unnecessary because Payrow has waived any argument that his deposition testimony is competent or creates an issue of fact.   *See, e.g.*, *Transamerica Leasing, Inc. v. Inst. of London Underwriters*, 267 F.3d 1303, 1308 n.1 (11th Cir. 2001) (holding that arguments not made in a summary judgment response are waived).

The same is true with respect to Defendant's argument that Payrow's deposition testimony should not be credited under *Scott v. Harris*, 550 U.S. 372 (2007).   *Scott* held that "[w]hen opposing parties tell two different stories, one of

which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.* at 380.   While *Scott* involved testimony that was contradicted by a videotape recording of the events, it is arguably not limited to that situation.   *See, e.g.*, *Johnson v. Glass*, No. 3:15-cv-324-J-32JBT, 2017 WL 3723369, at *7 (M.D. Fla. Aug. 29, 2017) (noting that the court did not view *Scott* as limited to cases involving a videotape of the event and holding that "[i]n light of the evidence presented by Defendants and Plaintiff's failure to provide any evidence other than his own uncorroborated and internally inconsistent testimony, no reasonable jury could find for Plaintiff in this case."); *Taylor v. Ridley,* 904 F. Supp. 2d 222, 232 (E.D.N.Y. 2012) (holding the case was an "extraordinary" one in which no reasonable jury could find for the plaintiff on his excessive force claim, which relied almost entirely on upon uncorroborated allegations that contradicted his testimony at his criminal trial and in his deposition).   Once again, as on the issue of Payrow's competence to testify, while arguments could be made on the other side of this issue, Payrow has decided not to make them.

In short, Payrow has not responded to Defendants' arguments that his deposition testimony is incompetent and that no rational jury could accept his version of events.   He also does not rely on the version of events he offered in his deposition to try to create an issue of fact; he relies instead on the accounts of Cloud and Rojas.   Accordingly, for purposes of summary judgment, the Court will consider only the versions of events offered by Cloud and by Rojas, and it will not

consider Payrow's deposition testimony.   Based on those accounts, as discussed below, Defendants are entitled to summary judgment on both the federal and state law claims.

### Cloud is Entitled to Qualified Immunity on the § 1983 Claims Against Him.

Payrow has sued Cloud under § 1983 for Fourth amendment violations involving the use of excessive force and false arrest.   Cloud moves for summary judgment based on qualified immunity.   "Section 1983 creates a private cause of action for deprivations of federal rights by persons acting under color of state law." *Laster v. City of Tampa Police Dep't*, 575 F. App'x 869, 872 (11th Cir. 2014); *see* 42 U.S.C. § 1983.   The Fourth Amendment's guarantee against unreasonable searches and seizures includes the right to be free from excessive force and the right to be free from arrest without probable cause.   *See, e.g.*, *Richmond v. Badia*, 47 F.4th 1172, 1179 (11th Cir. 2022).

In § 1983 cases, when a defendant raises the issue of qualified immunity and demonstrates that he was acting within the scope of his discretionary authority, the plaintiff bears the burden of overcoming that defense.   *See, e.g.*, *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002).   A government official is completely protected from suit if his conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."   *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

Importantly, "[t]he determination of whether a police officer's actions were constitutional must be undertaken from the perspective of a reasonable officer on the scene under the same conditions, rather than with the 20/20 vision of hindsight, as the former allows for proper appreciation of the fact that police officers are often forced to make decisions about the amount of force that is necessary in situations that are tense, uncertain, and rapidly evolving." *Smith v. LePage*, No. 1:12-CV-0740-AT, 2015 WL 13260394, at *1 (N.D. Ga. Mar. 31, 2015). A police officer will be entitled to qualified immunity "if an objectively reasonable officer in the same circumstances could have believed that the force used was not excessive." *Vinyard*, 311 F.3d at 1346 (citing *Anderson v. Creighton*, 483 U.S. 635, 638-41 (1987)).

When analyzing whether a defendant is entitled to qualified immunity, the court considers two questions: (1) whether the facts, taken in the light most favorable to the plaintiff, show that the defendant's conduct violated the plaintiff's constitutional rights, and (2) whether the plaintiff's rights were clearly established. *See, e.g.*, *Saucier v. Katz*, 533 U.S. 194, 201-02 (2001); *Fils v. City of Aventura*, 647 F.3d 1272, 1287 (11th Cir. 2011); *Hadley v. Gutierrez*, 526 F.3d 1324, 1329 (11th Cir. 2008).[1]

---

[1] Courts may exercise their discretion when deciding which of the two prongs should be addressed first, depending upon the unique circumstances in each particular case. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009); *Corbitt v. Vickers*, 929 F.3d 1304, 1311 (11th Cir. 2019). Accordingly, a court "may grant qualified immunity on the ground that a purported right was not 'clearly established' by prior case law, without resolving the often more difficult question whether the purported right exists at all." *Reichle v. Howards*, 566 U.S. 658, 665 (2012).

"For a right to be clearly established, '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'"   *Corbitt v. Vickers*, 929 F.3d 1304, 1311 (11th Cir. 2019) (quoting *Anderson*, 483 U.S. at 640).   Officials are not required to be creative or imaginative in drawing analogies from decided cases.   *Id.* at 1311.   An official's knowledge of an abstract right is not the equivalent of knowledge that the conduct at issue infringes that right.   *Id.* at 1312.   A plaintiff may show that a constitutional right is clearly established by: (1) pointing to a materially similar case; (2) pointing to a broader clearly established principle that controls the novel facts of the situation; (3) or demonstrating that the conduct so obviously violates the constitution that prior case law is unnecessary."   *Terrell v. Smith*, 668 F.3d 1244, 1255-56 (11th Cir. 2012) (internal quotation omitted).

The Court has little trouble concluding that if, as Deputy Cloud testified, Payrow ignored Cloud's commands to stop and then charged at him without warning, wielding a screwdriver or other weapon in a threatening manner, Cloud's actions in shooting Payrow were objectively reasonable and did not constitute excessive force.   In *Nicarry v. Cannaday*, 260 F. App'x 166, 170 (11th Cir. 2007), for example, the Eleventh Circuit affirmed summary judgment for defendant sheriff's deputy on claim of excessive force where the plaintiff charged from a shed at law enforcement officers at full speed while holding a screwdriver.   "It is not constitutionally unreasonable for an officer to use deadly force '[w]here the officer has probable cause to believe that the suspect poses a threat of serious physical

harm, either to the officer or to others,' or 'if the suspect threatens the officer with a weapon . . . and if, where feasible, some warning has been given.'"   *Id.* (quoting *Tennessee v. Garner,* 471 U.S. 1, 11-12, (1985).

Payrow does not argue that under the foregoing circumstances there would be a jury question as to the reasonableness of Cloud's actions.   However, he points to the testimony of Rojas, who said he did not see a weapon in Payrow's hand.   It is important note that Rojas's statement is not necessarily inconsistent with Cloud's version.   It was night, Rojas was some distance from Cloud and Payrow, he was not focused on whether Payrow had a weapon, and as Rojas put it, "[e]verything happened so fast."   Rojas did not see Cloud draw his revolver, either.   But even if Rojas's testimony creates an issue of fact as to whether Payrow held a screwdriver or other weapon when he charged at Cloud, the Court concludes that Cloud did not violate a clearly established constitutional right.   Even assuming that Payrow had no weapon, Cloud was alone, without backup, late at night, facing an obviously disturbed individual claiming to be with the FBI, who charged at him suddenly and without warning as if to knock him to the ground.   Payrow has cited no case law showing that an individual in his position and under these circumstances would have constitutional right to be free from the application of deadly force, much less a clear right.[2]

---

[2] Payrow's cited cases are easily distinguishable.   *See, e.g., Teel v. Lozada*, 826 F. App'x 880, 883 (11th Cir. 2020) (officer shot diminutive plaintiff without warning when she was ten feet away, walking gradually, and made no sudden movements); *Greer v. Ivey*, 767 F. App'x 706, 709 (11th Cir. 2019) (physical evidence called into question whether the plaintiff was charging toward the deputies when they opened fire); *Clawson v. Rigney*, 777 F. App'x 381, 385 (11th Cir. 2019) ("Nor does the footage show Whidden running directly toward

Accordingly, Cloud is entitled to summary judgment on Payrow's § 1983 claim for excessive force under the Fourth Amendment.   Cloud is also entitled to summary judgment on the false arrest claim.   On the undisputed evidence, even under Rojas's account, Payrow physically assaulted a police officer.   That is probable cause to arrest him, and his false arrest claim therefore fails.   *See Crocker v. Beatty,* 995 F.3d 1232, 1245 (11th Cir. 2021) (holding that probable cause bars a claim for false arrest under Florida law just as it does under federal law).

### *The Sheriff is Entitled to Summary Judgment on the State Law Claims Against Him.*

Payrow asserts claims against the Sheriff for excessive force, false arrest, and false imprisonment.   The Sheriff argues that he is entitled to immunity under § 768.28(9)(a), *F.S.*, and alternatively that no evidence supports Payrow's claims. While the immunity question would ordinarily be considered prior to the merits issue, the Court will address these questions in reverse order.

To succeed on an excessive force claim under Florida law, the plaintiff must show that the law enforcement officer's actions were objectively unreasonable under the circumstances facing the officer.   *See, e.g., City of Miami v. Sanders*, 672 So. 2d 46, 47 (Fla. 3d DCA 1996); *City of Miami v. Albro,* 120 So. 2d 23, 26 (Fla. 3d DCA 1960).   The Sheriff, relying on Deputy Cloud's account that Payrow attacked him

---

Rigney in a manner that suggested he intended to attack him."); *McKinney by McKinney v. DeKalb Cty., Ga.,* 997 F.2d 1440, 1443 (11th Cir. 1993) ("As alleged by the plaintiffs, however, Abdul had previously put down his knife and was merely shifting position, not threatening the safety of any persons, when Officer Nelsen shot him.").

with a weapon, argues there is no evidence from which a jury could conclude Deputy Cloud's actions were unreasonable.   The Court will assume here, *arguendo*, that Rojas's testimony creates an issue of fact as to whether Payrow wielded a screwdriver or other weapon.   Even so, the Court concludes that Cloud's actions were objectively reasonable as a matter of law.   As discussed above, Deputy Cloud was alone with Payrow on the street, late at night, and Payrow appeared to be disturbed.   Payrow then suddenly charged Cloud in a hostile manner as if to tackle him, and Cloud had only a split second to act to avoid being taken to the ground by Payrow (as, in fact, he was), and thereafter possibly disarmed and severely harmed. There is no evidence suggesting it would have been physically possible for Cloud to have somehow sidestepped Payrow's attack, much less that he had sufficient time to "to calculate angles and trajectories to determine whether he was a few feet outside of harm's way" in order to avoid using deadly force.   *See Tillis on behalf of Wuenschel v. Brown*, 12 F.4th 1291, 1299 (11th Cir. 2021) (addressing qualified immunity under § 1983).

Payrow's opposition to the Sheriff's summary judgment relies on Rojas's version of events but offers no explanation as to how a jury could conclude that Cloud's actions were unreasonable.   Accordingly, the excessive force claim fails. As to the claims of false arrest and false imprisonment, under Rojas's account, Payrow physically assaulted a police officer.   That is certainly probable cause to arrest Payrow.[3]  *See Crocker,* 995 F.3d at 1245.

---

[3] Much of Payrow's response to Defendants' motions for summary judgment amounts to an effort to recast this case as one alleging that Cloud should not have initiated contact with

The Sheriff's motion argues that he is entitled to immunity if the allegations in the amended complaint are accurate.   However, the record evidence has shown that the allegations of the complaint are not accurate, and it is the record, not the pleadings, that governs at the summary judgment stage.   Because the Court agrees with the Sheriff's argument that the evidence is insufficient to support a finding that Cloud acted unreasonably or without probable cause, the Court necessarily concludes there is no evidence that Cloud acted "in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property" so as to immunize the Sheriff from liability under § 768.28(9)(a), *F.S.*   Accordingly, the Court concludes judgment for the Sheriff should be entered on the merits rather than on the basis of immunity.

Accordingly it is

**ORDERED**, **ADJUDGED**, and **DECREED**:

1.   "Defendant's Dispositive Motion for Summary Judgment and Incorporated Memorandum of Law" (Doc. 69) and "Defendant's Dispositive Motion for Summary Judgment and Incorporated Memorandum of Law" (Doc. 71) are **GRANTED**.

2.   The Clerk is **DIRECTED** to enter final judgment against Plaintiff Babak Payrow and in favor of Defendant Chad Chronister in his official capacity

---

Payrow or ordered him to stop in the first instance as opposed to alleging a claim for false arrest following the violent encounter between Payrow and Cloud.   This claim was not pled in Plaintiff's original complaint or amended complaint, and the Court declines to consider it.

as Sheriff of Hillsborough County and in favor of Defendant David Cloud, in his individual capacity.

3. Following entry of judgment, the Clerk is directed to terminate any pending motions and deadlines and thereafter close this case.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, on this 30th day of September, 2024.

**TOM BARBER**
**UNITED STATES DISTRICT JUDGE**